IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ANTHONY BLACKSHIRE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 2:09-CV-329-TJW |
| | § | |
| TYSON FOODS, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Tyson Food, Inc.'s ("Defendant" or "Tyson") Motion for Summary Judgment. (Dkt. No. 32). In its motion, Tyson moves the Court to grant summary judgment in its favor and against the plaintiff, Anthony Blackshire ("Plaintiff" or "Mr. Blackshire"), with respect to all claims asserted by Mr. Blackshire in this lawsuit.

### I. BACKGROUND

This is a negligence case based on injuries Mr. Blackshire allegedly sustained while an employee of Tyson. Mr. Blackshire alleges that on October 26, 2007, while he was working at Tyson's poultry processing facility located in Carthage, Texas, a pallet jack malfunctioned, accelerated into him, and pinned him against a pole, severely injuring his back, neck, legs, and other parts of his body. Mr. Blackshire also contends that Tyson was on notice that the pallet jack had been malfunctioning and failed to take the reasonable steps necessary to fix the malfunction.

At the time of the incident in question, Tyson did not possess workers compensation coverage which would cover Mr. Blackshire. Instead, Tyson offered its employees the

1

opportunity to participate in Tyson's Workplace Injury Settlement Program ("WISP").  WISP is an employee welfare benefit program that provides certain designated payments for work-related illnesses and personal injuries sustained by Tyson employees in the course and scope of their employment.  Pursuant to WISP, in the event that an employee sustains an injury in the course and scope of employment with Tyson, the employee automatically receives basic benefits under the program and may elect to become a participant in the program in order to receive more comprehensive benefits.  Election to participate in WISP requires a written acceptance to the terms of the program as well as a waiver of any cause of action at common law or under any statute to recover damages for personal injuries, occupational disease, or death sustained in the course and scope of employment, including claims based on negligent and grossly negligent acts or omissions ("Acceptance and Waiver").  After his alleged injury, Mr. Blackshire signed the WISP Acceptance and Waiver on November 14, 2007 and received benefits as a participant in the WISP program.  The WISP Acceptance and Waiver states:

> In exchange for eligibility for any Comprehensive Benefits under the Program, I HEREBY VOLUNTARILY RELEASE, WAIVE, AND FOREVER GIVE UP ALL MY RIGHTS, CLAIMS AND CAUSES OF ACTION, WHETHER NOW EXISTING OR ARISING IN THE FUTURE, THAT I MAY HAVE AGAINST THE COMPANY, TYSON FOODS, INC. AND THEIR PARENT, SUBSIDIARY AND AFFILIATED COMPANIES AND ALL OF THEIR OFFICERS, DIRECTORS, OWNERS, EMPLOYEES AND AGENTS THAT ARISE OUT OF OR ARE IN ANY WAY RELATED TO THE INJUIRES (INCLUDING A SUBSEQUENT OR RESULTING DEATH) SUSTAINED IN THE COURSE AND SCOPE OF MY EMPLOYMENT WITH THE COMPANY.  I EXPRESSLY UNDERSTAND THAT INCLUDED IN THE CLAIMS THAT I AM RELEASEING, WAIVING AND GIVING UP ARE CLAIMS BASED ON NEGLIGENT OR GROSSLY NEGLIGENT ACTS OR OMISSIONS.

Tyson now moves for summary judgment of all claims asserted by Mr. Blackshire in the present action based on the executed WISP Acceptance and Waiver as well as Mr. Blackshire's acceptance of benefits pursuant to WISP.

Mr. Blackshire admits that he was provided with a copy of the WISP Acceptance and Waiver on November 1, 2007 and signed the Acceptance and Waiver on November 14, 2007. However, Mr. Blackshire claims that he did not see the first page of the Acceptance and Waiver and did not understand the terms of the Acceptance and Waiver when he signed it. Mr. Blackshire further contends that Tyson's staff nurse, Jessica Rasberry Gatlin ("Ms. Gatlin"), told him that he was required to sign the waiver in order to have his medical expenses paid and to avoid being put on a leave of absence. Accordingly, Mr. Blackshire argues that he felt pressured, threatened, and confused and that he signed the Acceptance and Waiver without understanding its contents or consequences.

## II. LEGAL STANDARD

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-55 (1986). Upon reviewing the evidence, the Court may only grant summary judgment if there is no genuine dispute of material fact, meaning that "a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When the summary judgment movant demonstrates the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show there is a genuine

factual issue for trial. *Celotex*, 477 U.S. at 323-24. The non-movant must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Holland v. City of Houston*, 41 F. Supp. 2d 678, 687 (S.D. Tex. 1999). When ruling on a motion for summary judgment, the non-movant's evidence is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The court must not resolve factual disputes by weighing conflicting evidence, *Farbwerke Hoeschst A.G. v. M/V "Don Nicky,"* 589 F.2d 795, 798 (5th Cir. 1979), since it is the province of the jury to assess the probative value of the evidence. *See, e.g., Gross v. Southern Railway Co.*, 414 F.2d 292, 297 (5th Cir. 1969); *Gauck v. Meleski*, 346 F.2d 433, 436 (5th Cir. 1965).

### III. ANALYSIS

Section 406.033 of the Texas Worker's Compensation Act covers actions against employers who do not subscribe to worker's compensation insurance. Section 406.033 was amended, effective September 1, 2005, to include subsection (f), which puts limits on the circumstances under which an employee may waive his or her rights to sue a non-subscribing employer to recover damages for personal injuries or death sustained in the course and scope of employment. Section 406.033(f) reads:

> (f) A cause of action [against a non-subscribing employer] may not be waived by an employee after the employee's injury unless:
> (1) the employee voluntarily enters into the waiver with knowledge of the waiver's effect;
> (2) the waiver is entered into not earlier than the 10th business day after the date of the initial report of injury;
> (3) the employee, before signing the waiver, has received a medical evaluation from a nonemergency care doctor; and
> (4) the waiver is in a writing under which the true intent of the parties is specifically stated in the document.

TEX. LAB. CODE ANN. § 406.033(f) (Vernon 2010).

Tyson argues that Mr. Blackshire signed a valid waiver that complies with the requirements of Section 406.033(f), and, therefore, that the plaintiff has released any and all personal injury claims and waived any cause of action to recover damages for personal injuries sustained in the course and scope of his employment, including the claim that is the basis for this lawsuit. Mr. Blackshire, however, claims that the waiver is void because he did not voluntarily enter into the waiver with knowledge of the waiver's effect, but Mr. Blackshire does not challenge that the waiver met the other requirements of Section 406.033(f). *See* TEX. LAB. CODE ANN. § 406.033(f) (1). Accordingly, the Court must determine if there is a fact question regarding whether the Plaintiff, who admits to signing the waiver, voluntarily entered into the waiver with knowledge of the waiver's effect in accordance with Section 406.033(f)(1) of the Texas Worker's Compensation Act.

Tyson has presented documentary and deposition evidence demonstrating: (1) Mr. Blackshire was informed in writing shortly after he began working for Tyson that Tyson does not have worker's compensation insurance coverage to protect Mr. Blackshire from damages due to work-related illness or injury; (2) Mr. Blackshire acknowledged receipt of this notice by signing it; (3) as a new team member, Mr. Blackshire was provided with training material, which included a copy and explanation of the WISP program; (4) Mr. Blackshire also acknowledged receipt of the training material by signing it; (5) Ms. Gatlin, a Tyson staff nurse, provided Mr. Blackshire with a copy of the Acceptance and Waiver a few days after his alleged injury and went over it with Mr. Blackshire "verbatim" a couple of weeks after his alleged injury; (6) Ms. Gatlin asked Mr. Blackshire if he had any questions regarding the waiver and he said that he did not; (7) Mr. Blackshire reviewed and signed the WISP Acceptance and Waiver on November 14,

2007, more than two weeks after his alleged injury on October 26, 2007; and (6) Mr. Blackshire received benefits under WISP, including payment of his medical bills, until January 22, 2008.

To counter Tyson's summary judgment evidence, Mr. Blackshire attached an affidavit to the opposition to the motion for summary judgment stating that he did not have the opportunity to review the WISP Acceptance and Waiver in its entirety before signing it and that it was never explained to him. Mr. Blackshire's affidavit also stated that he did not read the waiver or understand the importance of the waiver when he signed it. Additionally, the affidavit claims that Mr. Blackshire was told that he had to sign the waiver to have his medical expenses paid and that if he did not sign the waiver, then he would not be able to continue working for Tyson. Finally, Mr. Blackshire stated in the affidavit that he did not want to sign the waiver and that he did not understand its terms or consequences. Plaintiff's opposition to the motion for summary judgment also cited to portions of Ms. Gatlin's deposition where she stated that Mr. Blackshire did not want to sign the WISP waiver initially.

> Q. Whenever I got through with his thing, he didn't want to sign it. So I called HR because that's our step. . . .

Gatlin Deposition, 33:22-34:1.

> Q. Okay. You were calling HR because he didn't want to sign [the waiver], right?
> A. Yes, sir.

Gatlin Deposition, 33:11-13. The response also points to portions of Ms. Gatlin's deposition where she admits that she did not know whether Mr. Blackshire understood the Acceptance and Waiver before he signed it.

> Q. Do you know how well Mr. Blackshire reads?
> A. No sir.

6

> Q. Do you know the extent to which Mr. Blackshire understands the legal terms contained in [the waiver]?
> Q. I – I'm just asking if you – if you have any idea.
> A. I know nothing about him, no, sir.

Gatlin Deposition, 35:4-11.

> Q. He never made the statement to you that he had read and understood everything that was in the document, correct?
> A. He didn't make that statement?
> Q. Right.
> A. He didn't make that statement, but –
> Q. Okay.

Gatlin Deposition, 42:21-43:2. Relying primarily on Mr. Blackshire's affidavit and Ms. Gatlin's deposition testimony, Plaintiff argues that Mr. Blackshire felt pressured, threatened, and confused and signed the waiver without understanding its contents or consequences. Accordingly, Plaintiff argues that the waiver is invalid under Section 406.033(f) because Mr. Blackshire did not voluntarily enter into the waiver with knowledge of the waiver's effect.

Tyson, however, cites case law recognizing that the general rule in Texas is that every person who has the capacity to enter into a contract is held to know what words were used in the contract, to know their meaning, and to understand their legal effect. *See In re Border Steel, Inc.*, 229 S.W.3d 825, 834 (Tex. App. 2007—El Paso, orig. proceeding) ("one who signs a contract is legally held to have known what words were used in the contract, to have understood their meaning, and to have comprehended the legal effect of the contract."); *Indem. Ins. Co. of N. Am. v. W.L. Macatee & Sons*, 101 S.W.2d 553, 556 (Tex. 1937) (same); *see also In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms"). Therefore, Tyson argues that, as a matter of law, Mr. Blackshire is deemed to

have read and understood the terms of the WISP Acceptance and Waiver he signed and is bound by its terms, regardless of whether or not he actually read or understood the waiver before signing it.

Tyson's argument would be persuasive if not for the specific language in Texas Labor Code Section 406.033(f), requiring that, for a waiver of a cause of action against a non-subscribing employee to be valid, the employee must "voluntarily enter[] into the waiver with knowledge of the waiver's effect." TEX. LAB. CODE. ANN. § 406.033(f)(1). No Texas court has addressed the scope of this language in Section 406.033(f)(1). Accordingly, the Court holds that the requirement of Section 406.033(f)(1) that the waiver of a cause of action against a non-subscribing employer be voluntarily entered into with knowledge of the waiver's effect, supersedes the general, common law presumption in Texas that one who has the capacity to enter into a contract is held to know what words were used in the contract, to know their meaning, and to understand their legal effect. Therefore, more than Mr. Blackshire's signature on the Waiver and Acceptance is required to demonstrate that he entered into the waiver voluntarily with knowledge of the waiver's effect in accordance with Section 406.033(f)(1).

Tyson next argues that the only summary judgment evidence offered that Mr. Blackshire did not voluntarily enter into the waiver with knowledge of its effect is the affidavit of Mr. Blackshire attached to the response to the motion for summary judgment. Tyson claims that this affidavit should be disregarded by the Court and stricken from the summary judgment evidence under the sham affidavit doctrine because it contradicts Mr. Blackshire's prior deposition testimony and provides no explanation for this contradition. Citing to several Texas cases, Tyson contends that a contradictory affidavit prepared by the same witness after a deposition

should be disregarded if (1) the discrepancy is not explained, and (2) it appears that affidavit was drafted solely as a sham to defeat summary judgment. *See Pando v. Southwest Convenience Stores, L.L.C.*, 242 S.W.3d 76, 79 (Tex. App.—Eastland 2007, no pet.); *Trostle v. Trostle*, 77 S.W.3d 908, 915 (Tex. App.—Amarillo 2002, no pet.); *Eslon Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 901 (Tex. App.—Austin 2001, no pet.); *Burkett v. Welborn*, 42 S.W.3d 282, 286 (Tex. App.—Texarkana 2001, no pet.); *Farroux v. Denny's Restaurants, Inc.*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

The Fifth Circuit has also held that a nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, previous sworn testimony. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). This rule evolved from cases in which opposing parties had provided the affidavit and the deposition, but it applies equally to situations where the affidavit contradicts prior sworn testimony by the affiant. *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482 (5th Cir. 2002); *see also, e.g., Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984). In *Thurman v. Sears, Roebuck & Co.*, the Fifth Circuit held that when the only summary judgment evidence suggesting that there was a genuine issue of material fact was an affidavit by the nonmovant that directly contradicted his prior deposition testimony, with no legitimate explanation regarding the contradiction, the affidavit was not enough to raise a genuine issue of material fact and defeat the motion for summary judgment. 952 F.2d 128, 137 n.23 (5th Cir. 1992). Accordingly, a nonmovant is precluded from using an affidavit to create a fact issue to defeat a motion for summary judgment when the affidavit (1) directly contradicts prior sworn testimony and (2) does not adequately

explain the contradiction. *See, e.g., Copeland*, 278 F.3d at 482; *S.W. Erectors*, 72 F.3d at 495-96; *Thurman*, 952 F.2d at 137 n.23; *Albertson*, 749 F.2d at 228.

Mr. Blackshire's affidavit attached to the response to the motion for summary judgment contains no explanation for the alleged inconsistencies between his prior deposition testimony and the affidavit, so the only question left for the Court is whether the affidavit does in fact directly contradict Mr. Blackshire's prior deposition testimony. Answering this question requires a closer look at Mr. Blackshire's affidavit and the deposition testimony at issue. Mr. Blackshire's affidavit includes the following relevant statements:

- Immediately following my injury, I reported the incident and sought medical treatment from the nurse at Tyson's facility, Ms. Jessica Rasberry Gatlin. When I went to see Ms. Gatlin, she handed me a stack of paperwork. Part of the papers I received was information regarding Tyson's Worker Injury Settlement Program ("WISP"). One of the documents that was shown to me regarding WISP was an "Acceptance and Waiver." I did not have the opportunity to read this document in its entirety and it was never explained to me. Further, I do not remember seeing the first page of this document.
- Ms. Gatlin did not read the waiver to me or offer any explanation of the terms of the waiver. I did not understand the implications of the waiver when I signed it. I was told only that it must be signed in order to get my medical expenses paid. When Ms. Gatlin showed me the waiver, she told me I had to sign it in order to get my medical expenses paid. She told me that if I did not sign it, I would not be able to continue working at Tyson.
- I did not want to sign the waiver. I did not understand the terms of the waiver or the consequences of signing the waiver. Because I did not understand the waiver, I did not want to sign it. When I told Ms. Gatlin that I did not understand or want to sign the waiver, I was told that I must sign the waiver in order to have my medical expenses paid. No person ever told me that I would be waiving any right to sue Tyson for my injuries. The only reason I signed the waiver is so that my expenses would be paid and I could see a doctor.

In his deposition on April 21, 2010, Mr. Blackshire admitted that the signature on the WISP waiver was his, but testified that he did not specifically remember the circumstances under which he signed the Acceptance and Waiver.

> Q. And do you recall signing this document in front of [Ms. Gatlin]?
> A. No, not really.

Blackshire Deposition, 73:24-74:1.

> Q. And your signature's on the second page, and I'm just wondering if you remember Jessica being there when you signed it.
> A. Huh-uh. I don't remember seeing this.

Blackshire Deposition, 74:11-14. Mr. Blackshire did, however, testify that he did not remember ever seeing the first page of the Acceptance and Waiver before signing it.

> Q. And just like we were talking about before, you-you read over things before you sign them, true?
> A. Correct. Try to.
> Q. What's that?
> A. I'll try to. I don't remember seeing, you know, the front page of this.
> Q. Well, the front page goes with the second page where you signed.
> A. Okay.
> Q. True?
> A. I don't know. I can't say.
> Q. You have no reason to doubt that's your signature, though?
> A. That's my signature right there (indicating).
> Q. And – and you have no reason to doubt that when you got this back in 2007, you reviewed it and then you signed it on the second page, correct?
> A. Correct. I'm pretty sure.

Blackshire Deposition, 74:21-75:14.

> Q. And since your signature's on the second page, do you have any reason to think that you – you didn't read this document before signing it?
> A. I don't remember seeing it.

Blackshire Deposition, 76:6-10. Finally, Mr. Blackshire testified that he was not very familiar with the WISP program, but acknowledged that he received benefits under the program after his injury.

> Q. And did you understand that Tyson had a program where they would pay for your medical treatment?
> A. Correct. That – that – correct.
> Q. Had you heard of the – the WISP program before?

11

> A. Well, I didn't know. – hardly know nothing about it because I ain't never been injured there, and that was my first time ever being injured. I – they did have a program. They was doing the program, and all of a sudden they stopped it.
> Q. Okay. And – and you were getting the benefits from the program at first?
> A. Co-correct. Correct.
> Q. And those benefits included that they were paying for your medical treatment?
> A. Yeah. True. Correct.

Blackshire Deposition, 77:4-20. Tyson argues that although Tyson testified in his deposition that he could not recall Ms. Gatlin's presence at the time he signed the waiver and could not recall the circumstances under which he signed the waiver, by the time he signed the affidavit in support of his opposition to the motion for summary judgment, he was suddenly able to remember not only Ms. Gatlin's presence, but also the documents with which he was presented along with significant detail regarding the conversation he had with Ms. Gatlin at the time he signed the Acceptance and Waiver.

The Court finds that there are some inconsistencies between Mr. Blackshire's deposition testimony and his affidavit executed in support of the opposition to the motion for summary judgment. However, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors*, 72 F.3d at 496. In determining whether an affidavit directly contradicts or simply supplements or explains prior sworn testimony, the Court should be careful not to usurp the jury's role in resolving questions of credibility. *See Kennett-Murray Corp.*, 622 F.2d at 893 ("In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition"). For example, in *Kennett-Murray Corporation*, the Fifth Circuit reversed the district court's grant of a motion for summary judgment, holding that the district

court improperly failed to consider an affidavit filed by the nonmovant which, the Fifth Circuit held, did not directly contradict prior deposition testimony and explained inconsistencies in prior deposition testimony as well as perceived inconsistencies between that deposition testimony and the affidavit. 622 F.2d at 893-95. The court noted that "[i]n considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition" because the two in conjunction "may disclose an issue of credibility." *Id.* at 893. Although the Fifth Circuit noted that the statements in the deposition did differ with some of the statements in the affidavit, it held that these conflicts presented a question of credibility which required jury resolution. *Id.* at 895. Similarly, Mr. Blackshire's affidavit does not directly contradict his prior deposition testimony, and the inconsistencies between Mr. Blackshire's deposition and affidavit merely raise issues of credibility for the jury's consideration. Therefore, the Court will not strike Mr. Blackshire's affidavit and will consider it as part of the summary judgment evidence.

Finally, the Court concludes that, even without Mr. Blackshire's affidavit, the deposition testimony of Ms. Gatlin and Mr. Blackshire raise a genuine issue of material fact as to whether Mr. Blackshire entered into the WISP Acceptance and Waiver voluntarily with knowledge of the waiver's effect. Ms. Gatlin testified that Mr. Blackshire did not want to sign the waiver and only did so after speaking with HR. Similarly, Ms. Gatlin testified that, although Mr. Blackshire did not ask her any questions regarding the waiver, he also never told her that he understood the effect of the waiver. Ms. Gatlin also testified that Mr. Blackshire would have been forced to take a leave of absence if he refused to sign the WISP Acceptance and Waiver. Finally, Ms. Gatlin testified that she does not know how well Mr. Blackshire reads or the extent to which he

understood the legal terms contained in the waiver. Additionally, Mr. Blackshire testified at his deposition that did not remember seeing the first page of the Acceptance and Waiver before signing it. This evidence alone, even without the evidence presented in Mr. Blackshire's affidavit, is enough to preclude summary judgment because it raises a genuine issue of material fact as to whether Mr. Blackshire voluntarily entered into the Acceptance and Waiver with knowledge of its effect.

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Defendant's Motion for Summary Judgement (Dkt. No. 32).

IT IS SO ORDERED.

SIGNED this 17th day of August, 2010.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE